**IT IS ORDERED as set forth below:**

**Date: March 27, 2025**



_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBERS** |
| | : | |
| | : | BANKRUPTCY CASE |
| JASON ERIC THURBER, | : | 23-52961-LRC |
| | : | |
| Debtor. | : | |
| _____ | : | |
| JAMES W. TARLTON, | : | ADVERSARY PROCEEDING |
| | : | NO. 23-05090-LRC |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | |
| JASON ERIC THURBER, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

**ORDER**

The Court held an evidentiary hearing on October 22, 2024, on the complaint filed by James W. Tarlton (the "Plaintiff") against Jason Eric Thurber ("Defendant"). (Doc. 1, the "Complaint"). This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C §§ 1334; 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

**PROCEDURAL HISTORY**

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code[1] on March 29, 2023 (the "Petition Date").  Plaintiff filed the Complaint on June 27, 2023, asserting claims for an accounting,[2] breach of contract, fraud, conversion, punitive damages and expenses of litigation, and seeking a determination as to dischargeability of debt under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).  On the Petition Date, a complaint asserting claims was pending in state court, which was stayed when Defendant filed bankruptcy (the "State Court Suit").

Following a failed attempt to mediate this dispute, Plaintiff requested a pretrial conference. Doc. 32.  The Court entered a non-consolidated pretrial order because Defendant informed Plaintiff that he would not participate in the trial.  On the morning of trial, Defendant appeared in the courtroom and restated that he did not intend to participate in the trial but wanted to present documents from the State Court Suit.[3]  The Court informed Defendant that it would allow him to make an oral motion but would not read a pleading filed in another court one minute before trial. Although the Court reminded Defendant that he was welcome to remain during the trial, Defendant stated that he would not do so and that he would instead file a post-hearing motion.  After he departed, Plaintiff presented evidence regarding his claim that Defendant owes him a debt of $212,168.58 that is nondischargeable under §§ 523(a)(2), (4), and (6).

Following trial, Defendant filed *Defendants'* [sic] *Brief in Support of Their Motion to Dismiss Plaintiff's Claims for Accounting, Fraud and Conversion* (Doc. 45, the "Motion"), to which Plaintiff responded and objected (Doc. 46).  The Court construes the Motion as either an

---

[1] 11 U.S.C. §§ 101, *et al*.  Further citations to § are to the Bankruptcy Code unless otherwise noted.
[2] This claim has since been abandoned.  *See* Doc. 46, p. 7.
[3] James W. Tarlton v. Thurber Law LLC [f/k/a London & Thurber LLC] and Jason E. Thurber, State Court of Fulton County, GA, Civil Action Number 20-EV-7294.

2

untimely motion to dismiss for failure to state a claim or a motion for judgment on the pleadings made pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure,[4] and has considered all legal arguments made in the Motion. As the Court, through the following findings of fact and conclusions of law made pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Bankruptcy Rule 7052), finds that Plaintiff has not only stated, but has proven, a claim, the Motion must, and will, be denied.

## FINDINGS OF FACT

Defendant is an attorney. Plaintiff first began working with Defendant at Morris Hardwick Schneider, a real estate closing firm in Atlanta. *See* Testimony of James W. Tarlton ("Tarlton Testimony"). Several years later, in 2016, Plaintiff and Defendant worked together at Sparks King Watts Reddick, LLC ("Sparks"), sharing an office for six or eight months. *Id*. Through their shared time there, Plaintiff and Defendant developed a working relationship, as well as a level of trust, and became friends who sometimes socialized together. *Id*. Later in 2016, Defendant departed Sparks to start his own real estate firm, London & Thurber, LLC n/k/a Thurber Law LLC ("Thurber Law"). *Id*. On or about April 6, 2018, Plaintiff entered into an agreement (the "Agreement") with Thurber Law to work as an attorney in an "of Counsel" role, primarily handling the closing of real estate transactions in the State of Florida. The Agreement consisted only of an email exchange

---

[4] A motion to dismiss under Rule 12(b)(6) must be made before a responsive pleading is filed. Here, Defendant did not file the Motion before filing his responsive pleading. "[T]he objection that a complaint 'fails to state a claim upon which relief can be granted,' Rule 12(b)(6), may not be asserted post-trial. Under Rule 12(h)(2), that objection endures up to, but not beyond, trial on the merits: 'A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading . . . or by motion for judgment on the pleadings, or at the trial on the merits.'" *In re Boulware*, 2009 WL 6499127 at *1 (Bankr. N.D. Ga. July 17, 2009) (Massey, J.) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006)). On the other hand, courts have construed a 12(b)(6) motion as a Rule 12(c) motion when the 12(b)(6) motion was filed after responsive pleadings but early enough as not to delay trial. *See, e.g.*, *Whitehurst v. Wal-Mart Stores East, L.P.*, 329 Fed. Appx. 206, 208 (11th Cir. 2008); *Garrett v. Unum Life Ins. Co. of America*, 427 F. Supp. 2d. 1158, 1160–61 (M.D. Ga. 2005).

between Plaintiff and Defendant, negotiating on behalf of Thurber Law, and did not include standard language that might ordinarily be included in such agreements. *See* Exh. 6.

Having reviewed the evidence provided at trial, the Court makes the following findings as to the terms of the Agreement: (1) Plaintiff was to start as "of Counsel" with the possibility of revisiting that status based on client development and revenue; (2) the portion of Thurber Law's overhead attributable to Plaintiff's team was to be deducted at cost from Plaintiff's clients' funds; (3) after overhead deductions, Thurber Law would receive 20% and Plaintiff 80%; (4) at least one of the employees, Brandon Schukei, was to be paid via deductions from Plaintiff's clients' funds; and (5) the addition of an associate attorney or paralegal was "TBD" based on work and business generation. *Id*. Under the Agreement, Thurber Law was to "set up" Plaintiff as a "separate company for purposes of figuring out revenue/expenses, etc." *Id*. Thurber Law was to provide Plaintiff with quarterly profit and loss statements ("P&Ls") to account for the amount of Plaintiff's clients' funds received and deductions for expenses and Thurber Law's share of the profit two weeks after the end of each quarter, after which Plaintiff and Defendant would reconcile the numbers, and Plaintiff would receive a disbursement. *Id*.

Thurber Law is based in Atlanta, Georgia. *See* Tarlton Testimony. Plaintiff worked in Sarasota, Florida, and all his clients' checks came to his office. *Id*. Plaintiff would take his clients' checks and deposit them into Thurber Law's operating account at a bank branch in Sarasota. The terms of the Agreement were followed, for the most part, for a little more than a year, though the P&Ls were never produced on a quarterly basis. *Id*. Defendant was the financial and tax matters partner and personally and solely prepared the P&Ls. *Id*.; Exh. 9. When the P&Ls were produced, Plaintiff would review the revenue and expenses, and Plaintiff and Defendant would go back and

4

forth to reach an agreed-upon number. *See* Tarlton Testimony. Plaintiff noted that the revenue numbers provided by Defendant were always low compared to Plaintiff's record of deposits, but the P&L review occurred on a rolling basis, and the reconciliation discussions were collegial. *Id.*

But by mid to late July 2019, Plaintiff and Defendant's relationship changed. *Id.* In August 2019, Plaintiff was still waiting for his 2019 Q2 P&L, which should have come in July. *Id.* Before providing the P&L, Defendant warned Plaintiff that he would not be getting any money. *Id.* Plaintiff had expected the opposite, as the time-period for the Q2 P&L would have covered one of the most successful periods in his career, revenue-wise. When Plaintiff finally received the late 2019 Q2 P&L, it showed substantial deductions for tax withholdings. *Id.* Plaintiff contacted Defendant, who informed Plaintiff that the firm's accountant, Larissa Humphrey, had advised him that Thurber Law should withhold estimated taxes from Plaintiff's profits. *Id.* Plaintiff questioned the validity of this because Thurber Law was taxed as a partnership rather than a corporation. When Plaintiff followed up with Defendant in October 2019, Defendant stated that Thurber Law, at that time, was an LLC taxed as a partnership, but that Ms. Humphrey was working to switch the firm to an S-Corp for the next year. *Id.*; Exh. 7. From Ms. Humphrey, Plaintiff later learned that Ms. Humphrey did not prepare the firm's tax documentation and that the only work she had done for Thurber Law was to file its incorporation papers. *See* Tarlton Testimony. No federal Form 1040-ES existed that would have confirmed that Thurber Law ever submitted any taxes withheld and remitted to the Internal Revenue Service on Plaintiff's behalf. *Id.*

In the first week or two of September 2019, Plaintiff became further concerned about the integrity of the financial information regarding his client's funds when he learned from two clients that Defendant had asked them to send their payments directly to Thurber Law. Plaintiff was

5

concerned that, if he did not collect his clients' checks for his team's work, he would have no record to compare against Thurber Law's record of deposits. Plaintiff left Thurber Law at the end of November 2019. *Id*.

In February 2020, Plaintiff followed up to find out when he would get the Q3 and the Q4 (through his departure) P&Ls from Thurber Law. *Id.*; *see also* Exh. 9. Defendant stated in an email response "I'll get this done after we finish up year end [sic] financials for the firm for tax season[,]" and added "[t]his is not top priority right now." *Id*. Plaintiff received a final P&L in April 2020. That P&L included updates to the 2019 Q2 P&L, as well as undated entries capturing P&L information from July to November 2019. *See* Tarlton Testimony; Exh. 1. Deductions were added for May and June 2019 relating to tax withholding. *See* Tarlton Testimony. Plaintiff testified that (1) the deductions for Florida account reconciliation expenses were larger than he expected; (2) he considered the payroll expenses for Jason Thurber, Jay London, and Wendy Claar ("Payroll Expenses") to be unauthorized deductions, as they did not work on his files and should, therefore, not be paid from his clients' funds; (3) the per person IT charges were inflated; and (4) the bookkeeping expenses that were ostensibly paid to the accountant for preparing Plaintiff's P&L each month should not have been included because Defendant prepared the P&Ls himself. *Id*. Some of the expenses, such as the deductions for the Payroll Expenses and some additional insurance expenses were added for the first time on the final P&L. Defendant had omitted this information for several quarters of P&Ls. Plaintiff had no reason to know of these expenses or to anticipate they would appear as a deduction on the P&Ls. Plaintiff did not agree to these deductions. *Id*.

Plaintiff filed the State Court Suit against Defendant and Thurber Law in the State Court

of Fulton County on December 4, 2020. *Id.* In preparation for the State Court Suit, Plaintiff created an itemized statement of his claim. *Id.*; *see also* Exh. 10 (the "Statement"). In addition to this itemized list of claims, Plaintiff, with the help of his accountant, annotated the final P&L he received, highlighting entries in yellow to indicate his allegations as to why the amounts charged against his profits were incorrect (*i.e.*, yellow for fraudulent expenses, blue for a dispute as to the amount, and green for Thurber Law expenses improperly deducted from Plaintiff's clients' funds). *See* Exh. 2.

Based on the testimony and documentary evidence, the Court finds that the following deductions made by Thurber Law were not permitted under the terms of the Agreement:

(1) The deduction for Bookkeeping in the amount of $5,250. Plaintiff testified that Defendant caused Thurber Law to deduct 21 months of bookkeeping expenses ($250.00 per month) for a total deduction of $5,250. The deductions were purportedly for the purpose of paying an accountant for the cost of bookkeeping attributed to Plaintiff's revenue, but Defendant informed Plaintiff that he alone was responsible for the P&Ls and oversaw drafting them. This is sufficient evidence to support a finding that Thurber Law did not incur a cost for bookkeeping that could be charged to Plaintiff under the Agreement. *See also* Exh. 2.

(2) The deduction for Estimated Taxes. Defendant caused Thurber Law to deduct $70,532.90 for "tax withholding." *See* Exhs. 2, 10. The Agreement did not provide for withholding of taxes from Plaintiff's share of profits, and Plaintiff was never presented with any evidence that any funds were remitted to the taxing authority on his behalf. The Court finds that these amounts were not authorized by the Agreement.

(3) The deduction for E&O/General Liability/Crime Policy Renewals in the amount of $4,459.50. *See* Exhs. 2, 10. Plaintiff testified that this is a company-level expense for an annual premium that was not part of the overhead to be deducted from his clients' funds. *See* Tarlton Testimony. The Court finds that the Agreement did not authorize a deduction of this amount.

(4) The deductions for Payroll, Insurance and 401k match May 2018 to December 2018 for Wendy Claar in the amount of $11,453.20; for Payroll and 401k match for Jay London, in the amount $9,484.93; and the deduction for Payroll and 401k match for Defendant in the amount $42,997.30. *See* Exhs. 2, 10. Plaintiff testified that these individuals never worked on his files, other than Defendant, who worked on only one closing project early in 2019 while Plaintiff was out of town. *See* Tarlton Testimony. Accordingly, the Court finds that these amounts should not have been deducted from Plaintiff's clients' funds.

## CONCLUSIONS OF LAW

Plaintiff seeks a determination of nondischargeability on the basis that the debt owed by Defendant to Plaintiff is a debt for a willful and malicious injury to Plaintiff's property.[5] Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "A presumption exists [that] all debts owed by the debtor are dischargeable unless the party contending otherwise proves nondischargeability by a preponderance of the evidence." *In re Crawford*, 2023 WL 6307067, at

---

[5] Plaintiff also seeks a determination that his debt is nondischargeable under §§ 523(a)(2)(A) and (a)(4). As the Court has determined that Defendant's debt to Plaintiff is nondischargeable under § 523(a)(6), it need not decide whether those subsections apply.

8

\*6 (Bankr. N.D. Ga. Sept. 27, 2023) (citing 11 U.S.C. § 727(b); *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993)). Because the "purpose of this 'fresh start' is to protect 'honest but unfortunate' debtors, . . . . [e]xceptions to discharge are, therefore, narrowly construed against the creditor and in favor of the debtor." *Id*. (citing *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir. 1994); *St. Laurent*, 991 F.2d at 680). To grant such a determination, the Court must first find that there is a debt owed by Defendant to Plaintiff. *See In re Willoughby*, 2017 WL 3741256, at \*3 (Bankr. N.D. Ga. Aug. 30, 2017); *In re Donnan*, 2013 WL 3992411, at \*6 (Bankr. M.D. Ga. Aug. 1, 2013), *aff'd sub nom. Fennell v. Donnan*, 2014 WL 231964 (M.D. Ga. Jan. 21, 2014).

Here, Plaintiff was in the process of liquidating his claims in the State Court Suit when Defendant filed bankruptcy, and that matter was stayed. Plaintiff asserts that the total debt owed to him by Defendant is $212,168.58. Exh. 10. As listed in Exhibit 10, this includes: (1) Bookkeeping Expenses; (2) IT Expenses; (3) Estimated Taxes; (4) Personal travel expenses of Defendant; (5) E&O/General Liability/Crime Insurance; (6) Partner Compensation; (7) Florida Account Reconciliation and Bank Fees; (8) Bank Fees & Account Reconciliation Expenses; and (9) Employer's Share of 2019 payroll taxes.[6] As the Court found above, there is evidence to support a finding that Thurber Law made inappropriate deductions from Plaintiff's earnings that total $144,177.83 for: (1) 21 months of bookkeeping expenses; (2) estimated taxes; (3) E&O/general liability/crime insurance; and (4) payroll expenses. Plaintiff presented insufficient evidence to establish all other amounts listed on Exhibit 10. For example, as to the IT expenses and the Florida account conciliation and bank fees, while Plaintiff testified that the deductions

---

[6] Plaintiff asserted counts for punitive damages and litigation expenses but did not pursue them at trial and, accordingly, the Court finds that these counts have been abandoned.

9

were far higher than he expected, he did not put forth sufficient evidence as to an amount he would have expected to pay, and the Court cannot quantify the debt.

Plaintiff, however, entered the Agreement with Thurber Law, not Defendant personally. Under Georgia law, "it is well established that '[a]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefore, [and] an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or cooperated therein.'" *In re Saye*, 2016 WL 908075, at *4 (Bankr. N.D. Ga. Mar. 2, 2016) (citing *Cherry v. Ward*, 420 S.E.2d 763, 765 (Ga.App.1992)). Accordingly, Defendant cannot be held liable for the debt established above under a mere breach of contract theory. Yet, "[w]hen sued in his personal capacity, 'an officer or agent of a corporation may not escape personal liability for his tortious misconduct damaging . . . third parties by hiding behind the corporate veil even in those situations where the corporation might also be a proper party to the action.'" *Id*. (quoting *Moore v. Barge*, 436 S.E.2d 746, 749 (Ga.App.1993)). "Although ordinarily officers and agents of a corporation are not personally liable for the torts of the corporation, 'corporation directors, officers and managers can be individually liable to third parties for participating in or assenting to torts committed by them or their corporation," and this "liability arises from the tortious conduct of the individual and does not rely on piercing the corporate veil.'" *Id*. (quoting *In re Dixon*, 525 B.R. 827, 841 (Bankr. N.D. Ga. 2015) (citing *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559 (11th Cir.1987)); *see also Milk v. Total Pay and HR Solutions, Inc.*, 280 Ga. App. 449 (Ct. App. Ga. 2006) (recognizing that an "LLC member may be held individually liable if he or she personally participates or cooperates in a tort committed by the LLC or directs it to be done" but

10

concluding that the evidence presented did not support a finding of fraud); *Unified Servs., Inc. v. Home Ins. Co.*, 218 Ga. App. 85, 89, 460 S.E.2d 545, 549 (1995) ("[W]e note that to the extent a jury finds Spencer was actively involved in tortious conduct while acting on behalf of USI, he would be personally liable for that conduct anyway."); *In re Hamby*, 646 B.R. 865, 877 (Bankr. N.D. Ga. 2022) ("Although a limited liability company is designed, in part, to shield a member's personal liability, Georgia law supports the conclusion that an agent of a corporation or limited liability company is still subject to personal liability for his or her personal conduct.").

Plaintiff asserts that Defendant personally participated in and directed a tort by converting Plaintiff's interest in his clients' funds paid to Thurber Law, which resulted in a loss to Plaintiff equal to the amount of the funds converted through unauthorized deductions. In *Chemtall, Inc. v. Citi-Chem, Inc.*, the court stated: "As an example, the corporate veil can be pierced where a corporate officer participates with his corporation in wrongfully converting another's property . . . . . . and no personal benefit need be shown." 992 F. Supp. 1390, 1402 (S.D. Ga. 1998); *see also DCA Architects, Inc. v. American Bldg. Consultants*, 203 Ga.App. 598, 600, 417 S.E.2d 386 (1992) ("It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. It is in law a conversion whether it be for his own or any other's use.... Thus, there is no requirement that a corporate officer personally profit from the conversion of property, only that he participate in or direct the commission of the act."). Under Georgia law, a "prima facie case for conversion requires (1) title to the property; (2) possession by the defendants; (3) demand for possession; and (4) refusal to surrender property." *In re Pervis*, 512 B.R. 348, 365 (Bankr. N.D. Ga. 2014). Plaintiff need not demonstrate legal title, as "any legal interest in personalty may give rise to a conversion claim."

*Unified Servs., Inc. v. Home Ins. Co.*, 218 Ga. App. 85, 89, 460 S.E.2d 545, 549 (1995).

In the Motion, Defendant argues that, under Georgia law, a claim for conversion cannot lie when there is merely a breach of contract and that money cannot be the subject of a conversion, citing *Am. Gen. Life & Accident Ins., Co. v. Ward*, 509 F. Supp. 2d 1324, 1330 (N.D. Ga. 2007); *Faircloth v. A.L. Williams & Assocs.*, 206 Ga. App. 764, 768 (1992); *United Serv. Inc. v. Home Ins. Co.*, 218 Ga. App. 85, 87 (1995); *Z-Space, Inc. v. Dantanna's CNN Center, LLC*, 349 Ga. App. 249, 253 (2019); *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2001); *Moore v. Barge*, 210 Ga. App. 552, 557 (1993). In *Deverze v. Uber Techs., Inc.*, 2021 WL 1053641, at *9 (N.D. Ga. Feb. 4, 2021), Judge Pannell rejected similar arguments made under somewhat analogous facts to find that the plaintiff had stated a claim for conversion where, under a contract between plaintiff and defendant, defendant agreed to charge customers for rides and to pay its drivers on a weekly basis after deducting its percentage fee. The court reasonably inferred from the terms of the agreement between the parties that "the money earned by each driver was placed by [defendant] into a fund of some sort and earmarked for each particular driver, so that each driver could be appropriately compensated." *Id*. Therefore, the court stated, "[c]ontrary to the [defendant's] assertion, it was not necessary that the $3,800 be held separate from [plaintiff's] other earnings," and cited *Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 583 S.E.2d 6, 9 (Ga. 2003), for the proposition that the commingling of funds was not fatal to the conversion claim. *Id*. Because the "money allegedly owed to [plaintiff] was specifically earmarked for him," the funds "were sufficiently specific and identifiable to support a claim for conversion," notwithstanding the existence of a contract that required defendant to pay the funds to plaintiff. *Id*. (citing *DCA Architects, Inc. v. American Bldg. Consultants, Inc.*, 417 S.E.2d 386, 388 (Ga. Ct. App. 1992)

(holding that a jury should hear whether a conversion claim will lie regarding a failure to pay design fees received from projects the plaintiff worked on)).

The Court agrees with Plaintiff that, here, the funds at issue were sufficiently "specific and identifiable" and were "specifically earmarked for remittance to" Plaintiff to support a conversion cause of action. *Unified Servs., Inc. v. Home Ins. Co.*, 218 Ga. App. 85, 89, 460 S.E.2d 545, 549 (1995) (citing *Adler v. Hertling*, 215 Ga.App. 769 (1 & 2), 451 S.E.2d 91 (1994); *Grant v. Newsome*, 201 Ga.App. 710(1), 411 S.E.2d 796 (1991)); *see also In re Pervis*, 512 B.R. 348, 365 (Bankr. N.D. Ga. 2014) ("Although the statute refers to 'personalty,' the tort embodies the common law action of trover, and therefore applies to specific money as well, when the money is identifiable or traceable. *See Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 276 Ga. 817, 583 S.E.2d 6 (2003); *Grant v. Newsome*, 201 Ga.App. 710, 411 S.E.2d 796 (1991)); *DCA Architects, Inc. v. Am. Bldg. Consultants, Inc.*, 203 Ga. App. 598, 600–01, 417 S.E.2d 386, 389 (1992); *Iyer v. Prism HSH Properties, LLC*, 909 S.E.2d 454, 459–60 (Ga. Ct. App. 2024) ("The trial court's ruling, however, construes the conversion claim too narrowly. Viewed favorably to Madhu, the claim does not simply allege a failure to distribute money owed under the agreement. It asserts that, despite Madhu's request for payment, Ganesan mismanaged the Prism HSH funds, took her proceeds into his possession, and used that money to pay off his own personal debts."). The Agreement did not provide for Plaintiff to be treated as an employee or an independent contractor or provide for Thurber Law to compensate Plaintiff from its separate assets, regardless of whether Plaintiff's clients' funds were deposited. In this regard, the Agreement was similar to the profit-sharing agreement at issue *In re Pervis*, 512 B.R. 348, 365 (Bankr. N.D. Ga. 2014), in which Judge Hagenau found that the plaintiff had "proven her claim of conversion" under Georgia law where,

under a profit-sharing agreement, plaintiff was entitled to a share of a payment made to debtor; debtor received the funds, held them, and spent them; plaintiff demanded the money; and debtor refused to return it. As in the *Deverze* case, the evidence established that Thurber Law received checks that were easily identifiable as being Plaintiff's clients' funds; that those funds were "earmarked" for disbursement to Plaintiff after certain deductions when Thurber Law complied with its agreement to "set up" Plaintiff as a separate company for bookkeeping purposes and to create and send P&Ls; Plaintiff made demand for the surrender of the remainder—his rightful share (as shown by the filing of the State Court Action); and the funds were not surrendered.

Plaintiff's evidence also established that Defendant, as the financial and tax matters partner and the person who personally prepared the P&Ls, participated and directed these acts, such that he is personally liable to Plaintiff in the amount of $144,177.83. Defendant "was intimately involved in negotiating the [Agreement] and was therefore aware of the terms requiring [Thurber Law] to pay [Plaintiff], he "administered the funds collected," and he "was the individual at [Thurber Law] who . . . determined [Thurber Law]" would not pay Plaintiff his rightful share of the funds, and this evidence is sufficient for the Court to conclude that Defendant "participated in or specifically directed" the conversion. *DCA Architects, Inc. v. Am. Bldg. Consultants, Inc.*, 203 Ga. App. 598, 601, 417 S.E.2d 386, 389 (1992).

As to the nondischargeable nature of this debt, § 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The term "willful" means "intentional and deliberate." *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1263 (11th Cir.1988). "The plaintiff must show that the debtor actually intended to do what the debtor is being accused of doing." *In re Pervis*,

512 B.R. 348, 376 (Bankr. N.D. Ga. 2014) (citing *Commonwealth Land Title Ins. Co. v. Homer (In re* Homer*)*, 168 B.R. 790, 805 (Bankr. N.D. Ga. 1994)); *see also Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (holding that § 523(a)(6) requires a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury"). "To establish a willful injury, the plaintiff must show that the debtor defendant had a subjective motive to inflict injury or believed his conduct was substantially certain to cause injury." *Id*. (citing *Maxfield v. Jennings (In re* Jennings*)*, 670 F.3d 1329, 1334 (11th Cir. 2012)). The Court can infer the debtor's subjective intent from the surrounding circumstances. *Id*. "The term 'malicious' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will.'" *Id*. (quoting *Jennings*, 670 F.3d at 1334)).

Plaintiff has presented sufficient evidence to show that the debt owed by Defendant because he participated in and directed the conversion of Plaintiff's earnings is a debt for willful and malicious injury within the meaning of § 523(a)(6). The Court, having heard Plaintiff's testimony regarding the shift in his relationship with Defendant and the timeline of events concludes that, at some point in the summer of 2019, Defendant decided to cause Thurber Law to take more than its share of Plaintiff's earnings. He accomplished this by creating phantom deductions for expenses and tax withholdings and by using Plaintiff's funds to pay himself and other attorneys. When confronted by Plaintiff, Defendant lied to him about his reasons for doing so. He gave Plaintiff no credible excuse for his conduct and failed to appear before the Court to justify his actions. The Court has no difficulty concluding that Defendant intended to convert Plaintiff's interest in his client funds, that Defendant had a substantial certainty that this would harm Plaintiff by depriving him of his livelihood, and that this conduct was wrongful and without

justification. Accordingly, the Court finds that the debt at issue is nondischargeable under § 523(a)6).

## CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is DENIED;

IT IS FURTHER ORDERED that, as to Count III of the Complaint, Defendant is liable to Plaintiff for a debt in the amount of $144,177.83 (the "Debt") and, as to Count VIII, the Debt is nondischargeable pursuant to § 523(a)(6);

IT IS FURTHER ORDERED that all other relief requested in the Complaint as DENIED;

IT IS FURTHER ORDERED that the Court will enter a separate judgment concurrently with the entry of this Order.

## END OF DOCUMENT

**Distribution List**

James W. Tarlton
Main Street Title Group LLC
52 Riley Rd.
Suite 348
Celebration, FL 34747

John K. Rezac
Taylor English Duma LLP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339

Jason Eric Thurber
860 Peachtree St Ne Unit 2005
Atlanta, GA 30303